

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-22-2005

# Wati v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3345

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Wati v. Atty Gen USA" (2005). *2005 Decisions.* Paper 789.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/789

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-3345
_____

TANTY HERA WATI,

Petitioner

v.

ALBERTO GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,
_____

On Petition for review of an Order of the Board of Immigration Appeals
BIA No. A79 309 074
_____

Submitted Under Third Circuit LAR 34.1(a) July 12, 2005

Before: SLOVITER, McKEE, and ROSENN, Circuit Judges

(Filed July 22, 2005)
_____

OPINION OF THE COURT
_____

ROSENN, Circuit Judge.

Tanty Wati seeks review of the final order of the Board of Immigration Appeals

("BIA") denying her asylum, withholding of removal, and relief under the Convention

Against Torture ("CAT"). Although the BIA denied asylum based upon Wati's failure to

file within one year of admission to the United States as required by 8 U.S.C.

§ 1158(A)(2)(B), Wati ignores this determination and contends blanketly that the BIA's denial of asylum, withholding of removal, and relief under the CAT was unsupported by substantial evidence. We have jurisdiction pursuant to 8 U.S.C. § 1252(a). We will deny the Petition for Review.

## I.

Because we write primarily for the parties, we discuss only those facts necessary to the issues on appeal. Wati, an Indonesia citizen of Chinese ethnicity, entered the United States lawfully as a tourist on March, 3, 2000. The Immigration and Naturalization Service ("INS")[1] began removal proceedings in May, 2001, based on Wati's illegal overstay of her non-immigrant visa. ( Wati conceded removability, but applied for asylum, withholding of removal, and relief under the CAT. In the alternative, Wati requested voluntary departure under section 240(b)(B) of the Immigration and Naturalization Act ("INA").

According to Wati's testimony, she was persecuted by fellow Indonesians on account of her Chinese ethnicity and Catholic religion. Wati recounted that once a month, sports fans returning from soccer matches would routinely disrupt the religious services she was attending. In addition, and more centrally to her claim, Wati recalled that she was struck on her back while fleeing from rioters who terrorized Jakarta during

---

[1]Effective March 1, 2003, the Immigration and Naturalization Service was dismantled and its interior enforcement functions subsumed by the Department of Homeland Security, Bureau of Immigration and Customs Enforcement. See Homeland Security Act, 116 Stat. 2135, Pub.L. 107-296 § 441 (2002).

the infamous riots of May, 1998.

On the day the riots erupted, Wati, a resident of the town of Surabaya, was on vacation visiting her father in Jakarta, which is located some 17 hours by car from Surabaya. Wati was in her father's electronics store located in a mall comprised primarily of Chinese merchants when approximately 1000 people, mostly ethnic Muslims, descended upon the mall and looted the stores. While fleeing the crowd with her father, Wati was hit on her back by one of the rioters. However, because the rioters appeared more interested in looting than harming the Chinese merchants, Wati and her father, among others, were able to take refuge in a mosque. There, they waited out the riots until a police van rescued them and escorted them home.

During the riots, the store of Wati's father was burned and along with it thousands of dollars in United States currency which he had stashed inside. After the riots, Wati returned to Surabaya where she remained for almost eight months. To escape the trauma that she allegedly suffered as a result of the riots, Wati went to visit family members in Hong Kong where she obtained a work visa but never used it. Missing her friends and family after six months, she returned to Indonesia in August, 1999, remaining until March, 2000.

In March, 2000, Wati traveled to the United States on a tourist visa. Although she procured the visa in November, 1999, allegedly out of fear for her safety, Wati delayed her departure from Indonesia approximately four months until her father could retrieve

his mutilated United States currency from a currency broker who was going to replace it at a cost of 50% of its face value. Wati's father wanted her to take the currency to the United States to exchange it for its full value.

Upon arrival in the United States, Wati traveled to the United States Department of Treasury in Washington, D.C. to exchange her father's mutilated currency. The currency was exchanged by October, 2000, at which point Wati wired the funds back to her father. However, Wati remained in the United States, at this point weeks beyond the time permitted by her visitor visa. Wati claims that she was so preoccupied with the currency exchange that she only learned about the asylum process in November, 2000. And she inexplicably delayed filing her application until April, 2001.

After a hearing, the IJ denied Wati's asylum claim for failure to file within the one year time limit set forth in 8 U.S.C. § 1158(A)(2)(B). The IJ also denied her claim for withholding of removal based upon her failure to satisfy the requirement to show a clear probability of persecution. Finally, the IJ denied Wati relief under the CAT for failing to establish that it was more likely than not that she would be tortured if removed to Indonesia. However, the IJ granted Wati's application for voluntary departure in lieu of removal. The BIA affirmed the IJ's decision. This appeal followed.

## II.

We review any factual findings under the substantial evidence standard, reversing only if the evidence presented "not only supports a contrary conclusion, but compels it."

4

Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).

Asylum may be granted to an alien who is able to demonstrate an inability or unwillingness to return to her country of nationality because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, political opinion, or membership in a particular social group. 8 U.S.C. § 1101(a)(42)(A). An asylum applicant must file her application within one year of entering the United States, 8 U.S.C. § 1158(a)(2)(B). However, failure to timely apply may be excused if the applicant can demonstrate materially changed circumstances affecting eligibility or extraordinary circumstances relating to the delay in filing. 8 U.S.C. § 1158(a)(2)(D).

Withholding of removal, although closely related to asylum, requires the asylum applicant to satisfy a higher standard of proof, namely "clear probability of persecution." Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (quoting INS v. Stevic, 467 U.S. 407, 430 (1984)). A clear probability means "more likely than not." Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003) (citing Stevic, 467 U.S. at 429-30). An applicant may satisfy this burden of proof by establishing past persecution in her country of intended removal. 8 C.F.R. § 208.16(b)(1)(i). Past persecution is established by demonstrating an incident that rises to the level of persecution which was "on account of" one of the statutorily-protected grounds and committed by the government or by forces the government is either unable or unwilling to control. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). An alien who has demonstrated past persecution is presumed to face

5

future persecution if removed.  Gambashidze v. Ashcroft, 381 F.3d 187, 191 (3d Cir. 2004); 8 C.F.R. § 208.16(b)(1)(i).

Withholding of removal under the CAT requires the petitioner to show that "more likely than not" she will be tortured if returned to her country.  Berishaj v. Ashcroft, 378 F.3d 314, 332 (3d Cir. 2005).  This requires petitioner to establish by objective evidence that she is likely to be tortured in the future.  Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003).  Claims for relief under the CAT are "analytically separate" from claims for asylum and withholding of removal under the INA.  Id. at 476.  Consequently, rejection of asylum and withholding of removal claims do not control the analysis of a CAT claim. Id.

### III.

#### A.  Eligibility for Asylum

The BIA found Wati statutorily ineligible for asylum based upon her failure to file an asylum application within the one year time allotted by 8 U.S.C. § 1158(a)(2)(B).  The BIA also concluded that Wati failed to establish either changed or extraordinary circumstances sufficient to waive the one year filing requirement.

Wati concedes that she failed to file her asylum application within one year of arriving in the United States.  However, Wati failed to challenge this statutory ineligibility in her brief.  Nonetheless, this failure is of no moment because we lack jurisdiction to review a BIA's determination that an asylum petition was not filed within the one year

6

limitations period, and that such period was not tolled by extraordinary circumstances. Tarrawally, 338 F.3d at 182, 185. Accordingly, we are unable to entertain Wati's challenge to the BIA's determination that her asylum application was time barred.

Although we lack jurisdiction to review the BIA's denial of Wati's asylum application, Wati's claims for withholding of removal and relief under the CAT are ripe for disposition. See id. at 185-86. We review each in turn.

## B. Withholding of Removal

The BIA concluded that Wati failed to satisfy the clear probability of persecution standard required to establish eligibility for withholding of removal. Wati counters that her detailed narrative account of persecution perpetrated by Muslim Indonesians against ethnic Chinese Indonesians, including the mall incident where she was hit on the back by rioters, provides ample support for the notion that she will likely suffer persecution if returned to Indonesia. We do not agree and conclude that substantial evidence supports the BIA's determination to the contrary.

The BIA denied Wati's claim for withholding of removal because her experiences did not rise to the level of persecution. The BIA concurred with the IJ, who reasoned that the rioting in Jakarta was lawlessness which "can break out among angry people anywhere in the world." Furthermore, the IJ found based on Wati's own testimony that the rioters' motives were to steal, not to persecute, and the rioting was neither sponsored by the Indonesian Government nor was it government-inspired persecution. Indeed, it

7

was the police who ushered the Chinese merchants to safety.  We conclude that the BIA's denial of withholding of removal, predicated upon the IJ's analysis, was reasonable because the evidence presented does not compel a contrary conclusion.  Abdille, 242 F.3d at 483-84.

## C.  Relief under the CAT

Turning to Wati's request for relief under the CAT, the BIA concurred with the IJ's finding that Wati failed to establish that she is more likely than not to be tortured if removed to Indonesia.  8 C.F.R. § 208.16(c)(2); see Sevoian v. Ashcroft, 290 F.3d 166, 175 (3d Cir.2002).  Because Wati has neglected to proffer any argument in her brief challenging this determination, she has waived this challenge.  Nagel v. Alspach, 8 F.3d 141, 143 (3d Cir. 1993) ("When an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal.").

However, even if the issue were preserved, Wati has failed to establish eligibility for relief under the CAT.  Torture is statutorily defined as "pain or suffering [that] is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."  8 C.F.R. § 208.18(a)(1).  Nothing in the record demonstrates that the feared persecutor here is the Indonesian Government or any public official or anyone working with the acquiescence of a public official.  As noted above, it was the police who ushered Wati and her father safely home following the riots.

8

Accordingly, there is substantial evidence to support the BIA's determination that Wati failed to qualify for relief under the CAT.

IV.

For the foregoing reasons, we will deny the Petition for Review.