

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-30-2008

# Tjie v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2721

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Tjie v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1303.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1303

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2721
_____

HIEN TJEN TJIE,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A96 266 251)
Immigration Judge:  Honorable Rosalind Malloy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 16, 2008

Before: RENDELL, GREENBERG and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Filed April 30, 2008 )
_____

OPINION OF THE COURT
_____

PER CURIAM

Hien Tjen Tjie petitions for review of a decision of the Board of Immigration

Appeals ("BIA") dismissing his appeal of the Immigration Judge's ("IJ") decision

denying his applications for asylum, withholding of removal, and protection under the

Convention Against Torture. We will deny the petition for review.

Tjie is a native and citizen of Indonesia. He came to the United States in 1999 as a visitor. In 2003, the Immigration and Naturalization Service issued a notice to appear charging that Tjie was subject to removal because he had stayed here longer than permitted. Through counsel, Tjie conceded he was removable as charged. He applied for asylum, withholding of removal, and relief under the Convention Against Torture. The IJ found Tjie ineligible for asylum because his application was untimely, and considered his other applications for relief.

At his hearing, Tjie relied on the affidavit he had submitted in support of his applications. Tjie stated in the affidavit that he had suffered persecution on account of his Chinese ethnicity and Christian religion. Tjie explained that he was a shopkeeper in an area of predominantly Muslim shopkeepers of Madurese ethnicity, and that the Madurese did not like Chinese Christians. One shopkeeper, who was jealous of Tjie's shop's success, harassed Tjie constantly and told customers not to buy clothes from "the Chinese man." A.R. at 138.

The shopkeeper's ill-will then appeared to subside, and she gave Tjie a cake. Tjie was busy with customers and did not eat the cake, but his wife did. An hour later, she became very ill. Tjie took his wife to the hospital, but she died. The doctor told Tjie that she was poisoned. Tjie did not have the doctor perform an autopsy because he did not want him to cut his wife's body. At Tjie's hearing, the IJ asked him why he did not have

2

the cake examined if he believed it was poisonous. He replied that he had thrown the cake away because it was attracting flies. Tjie also testified that the doctor had told him that his wife was poisoned based on her symptoms. When asked if the doctor made any notes, at first Tjie said yes, but then replied that he asked the doctor not to make notes because he was afraid the police would investigate and the shopkeeper's family would threaten him. Tjie submitted a death certificate, but it did not reflect the cause of death.

Tjie further stated in his affidavit that he did not report the crime to the police because no one would have testified against the Muslim shopkeeper or would have helped a Chinese Christian, and because Muslims would have retaliated against him. Tjie's wife died in 1987. Tjie stated that he closed his shop and could not concentrate on anything for the next six years. He then worked for various companies for about seven years. Tjie stated that he could not bear the violence of the May 1998 riots against the Chinese. He came to the United States in October 1999.

Tjie testified that he is afraid to return to Indonesia because he is still traumatized by his wife's death, and because the Madurese have closed many churches and the Muslims have tried to kidnap ministers. Finally, Tjie testified that he has twelve siblings who, along with his mother, remain in Indonesia. Tjie also has two sons. One is a student in Iowa, and the other lives in Canada. Tjie has one brother living here who is seeking asylum.

The IJ did not doubt that Tjie is a widower, but found the evidence insufficient to

3

directly connect his wife's death to the shopkeeper or to poisoning. The IJ did not believe

that the doctor agreed not to prepare a report, and found that Tjie's testimony in this

regard weakened his claim. The IJ also noted that Tjie did not testify that he or his family

had any problems attending church in Indonesia, and that his twelve siblings, who are

Chinese and Christian, live in Indonesia without any problems. The IJ stated that Tjie

could return to an area where the Madurese do not live. Absent evidence of Tjie's wife's

cause of death, the IJ found that Tjie did not suffer past persecution. The IJ also found no

clear evidence that he would be persecuted in the future if he returned to Indonesia.

The BIA dismissed Tjie's appeal. The BIA agreed that Tjie submitted insufficient

evidence to show that his wife's death was a result of eating poisoned cake, and thus

concluded that he failed to establish a nexus between the harm he suffered and his

ethnicity or religion. The BIA also rejected Tjie's argument on appeal that the IJ

incorrectly found no pattern or practice of persecution of Christians in Indonesia, noting

that the IJ had concluded that Tjie did not show a clear probability of future persecution

given that he had no problems attending church and his family still lived in Indonesia.[1]

We have jurisdiction to review the BIA's decision pursuant to 8 U.S.C. § 1252(a).

We review the BIA's findings under 8 U.S.C. § 1252(b)(4)(B), which provides that

"administrative findings of fact are conclusive unless any reasonable adjudicator would

---

[1]The BIA also agreed with the IJ that Tjie's asylum application was untimely, and that Tjie did not show that he was eligible for relief under the Convention Against Torture. These conclusions are not at issue in this appeal.

4

be compelled to conclude to the contrary." We have read this standard to require that the agency support its findings with substantial evidence, or evidence from which a reasonable fact finder could make a determination based on the administrative record. Gambashidze v. Ashcroft, 381 F.3d 187, 191 (3d Cir. 2004). In order to establish that he was entitled to withholding of removal, Tjie was required to show a clear probability – that it was more likely than not – that upon his return to Indonesia, he would be persecuted. Id. If Tjie demonstrated past persecution, he is presumed to face future persecution. Id.

Tjie argues in his brief that the BIA's decision is not supported by substantial evidence, and that the Muslim shopkeeper's poisoning of his wife constituted past persecution. Tjie, however, does not address the BIA's conclusion that he presented insufficient evidence to establish his wife's cause of death, and thus failed to show a nexus between the harm he suffered and his ethnicity or religion. Based on the evidence discussed above, a reasonable fact finder could determine that Tjie did not establish that the shopkeeper poisoned his wife or that the harm he suffered was on account of his ethnicity or religion. The record does not compel a finding of past persecution.

Tjie also argues that he faces a clear probability of future persecution. Tjie does not point to any evidence in the record in support of his argument. Instead, he contends that there is a pattern or practice of persecution of Chinese Christians in Indonesia. Tjie, however, did not present a pattern or practice claim before the IJ. His claim for relief

5

from removal was based on his wife's death. <u>See</u> A.R. at 138-41. The BIA correctly rejected Tjie's argument on appeal that the IJ erred in finding no pattern or practice of persecution because the IJ did not make such a finding. We also note that, contrary to Tjie's contention that he faces a clear probability of persecution if he returns to Indonesia, Tjie lived in Indonesia for twelve years after his wife's death without incident.

Accordingly, we will deny the petition for review.