NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3972
_____

BYRON OTTONIEL ARCHILA-LEMUS,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,

Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A208-537-769)
Immigration Judge: Honorable Kuyomars Q. Golparvar
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 23, 2017

Before: HARDIMAN, ROTH, and FISHER, *Circuit Judges*.

(Filed: August 17, 2017          )
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Byron Archila-Lemus petitions for review of an order of the Board of Immigration Appeals (BIA) denying him withholding of removal and deferral of removal under the Convention Against Torture (CAT). We will deny the petition.

I

A citizen of Guatemala, Archila-Lemus is a Jehovah's Witness. While preaching from home to home in early 2014, Archila-Lemus began providing religious instruction to a young boy named Luis. At that time, Luis lived with his mother and his mother's boyfriend Rafael, who was a member of the Mara-18 gang. Sometime after they met, Rafael told Archila-Lemus that he hated Jehovah's Witnesses, and that he wanted to kill all of them. Other Mara-18 members threatened Archila-Lemus's wife and son.

On August 8, 2015, after discovering Luis beaten and crying, Archila-Lemus asked Luis's mother if he could take Luis to his home. Rafael objected, warning Archila-Lemus "not to get involved in their business if [he] didn't want to [get] killed." App. 242. In spite of that warning, Archila-Lemus talked to Luis about moving in with Archila-Lemus and his wife.

Two days later, Archila-Lemus returned to Luis's home to provide religious instruction. During that visit, Luis's mother asked Archila-Lemus what the Bible taught about her sexual relationship with Rafael, who was married to another woman. Archila-Lemus answered by quoting a verse explaining that adultery is a sin. When Luis's mother told Rafael what Archila-Lemus had said, Rafael became enraged. He assaulted Archila-

2

Lemus, pulled a weapon, and threatened: "You get the hell out of here right now. Otherwise, I'll kill you. And make sure you take that other son [of] a bitch you love so much," (referring to Luis). App. 239. Luis's mother then asked Archila-Lemus to take Luis to his grandmother.

A month later, Rafael appeared in the parking lot of Archila-Lemus's church. After Archila-Lemus sent his family into church, Rafael accosted him, saying "you son of a bitch. You ruined my other home." App. 246. He told Archila-Lemus that he hated him and the Jehovah's Witnesses. Rafael then informed Archila-Lemus that his biological son—also a member of Mara-18—would kill Archila-Lemus on his behalf. After this incident, Archila-Lemus again went to visit Luis's mother, who warned him that filing a police report would mark his entire family for death.

About two days after the incident in the church parking lot, Archila-Lemus entered the United States without inspection. He was quickly apprehended, however, and removed under an expedited order of removal. After he was removed, Archila-Lemus moved in with his brother in Guatemala City. Two months later, Archila-Lemus re-entered the United States and was again arrested and referred to withholding-only proceedings. While the Immigration Judge (IJ) found Archila-Lemus credible despite "minor inconsistencies," App. 16, he denied withholding of removal and CAT protection.

As for the withholding claim, the IJ concluded that although Archila-Lemus's faith as a Jehovah's Witness "was part of" the reason he was threatened, it was "tangential" when compared to Archila-Lemus "continu[ing] to be involved in [Rafael's] family"

3

under circumstances "more akin to a disagreement." App. 19. The IJ also dismissed the CAT claim because Archila-Lemus: (1) had not claimed to be threatened by "government actor[s]" and (2) never gave "the government an opportunity to provide any type of protections" by filing a police report. App. 17. The IJ concluded that "if [Archila-Lemus] returns and moves to a different city, such as Guatemala City, and has no contact with Rafael or his family, the record does not reflect that he would have further persecution." App. 22. The IJ also noted that Archila-Lemus's wife and youngest son already live in Guatemala City.

A one-member panel of the BIA affirmed the IJ's decision on both claims in reliance on the IJ's reasoning. This appeal followed.

## II[1]

We review the agency's factual findings under the "substantial evidence" standard, upholding any determination "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Lin-Zheng v. Att'y Gen.*, 557 F.3d 147, 155 (3d Cir. 2009) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). "[W]hen the BIA defers to an IJ," as here, "we must review the IJ's decision as the final agency decision." *Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004). To reverse the

---

[1] The BIA had jurisdiction pursuant to 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a). Though Archila-Lemus also challenges the validity of his prior expedited order of removal, we have no jurisdiction to hear that claim. 8 U.S.C. § 1252(e)(2).

agency's factual finding, "we must find that the evidence not only *supports* that conclusion, but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n.1.

III

A

We first consider Archila-Lemus's withholding claim. Applicants for withholding of removal under 8 U.S.C. § 1231(b)(3)(A) carry the burden to show it is "more likely than not" they will face persecution if returned to their home country, "on account of race, religion, nationality, membership in a particular social group, or political opinion." *Toussaint v. Att'y Gen.*, 455 F.3d 409, 413 (3d Cir. 2006) (citation omitted). While religion need not be the only reason for persecution, it must be "at least *one central reason* for persecuting the applicant." *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 685 n.6 (3d Cir. 2015) (citation omitted).

Archila-Lemus claimed to be persecuted on account of his religion. And while there is evidence in the record to support that claim, the record also indicates that Archila-Lemus persistently injected himself into Rafael's home life despite explicit instructions to leave them alone. For that reason, the IJ concluded that Rafael's problem with Archila-Lemus was essentially a personal disagreement. The country conditions evidence does not otherwise support Archila-Lemus's claim. On this record, we cannot say that Archila-Lemus has met his heavy burden of showing that the record before the agency *compels* reversal of the IJ's conclusion that Archila-Lemus's faith was tangential to the persecution he experienced.

5

The IJ also found that "the record does not reflect that [Archila-Lemus] would have further persecution" if he relocated from his home to "a different city, such as Guatemala City." App. 22. This conclusion was supported by substantial evidence. The IJ cited Archila-Lemus's testimony that his family has lived in Guatemala City without incident, and that his wife's statement did not corroborate the claim that his family is in hiding. While an IJ must determine that relocation is both safe and reasonable, "[i]n any given case . . . only one of those questions may be at issue." *Gambashidze v. Ashcroft*, 381 F.3d 187, 192 (3d Cir. 2004). While we agree that "his wife's severely debilitated health" could limit relocation options, Archila-Lemus Br. 50, he testified that she already lives in Guatemala City. And the record does not suggest that Archila-Lemus meaningfully argued before the IJ that relocation to Guatemala City might be unreasonable. For these reasons, we are unpersuaded by the argument that the agency erred when it held that Archila-Lemus is not entitled to withholding of removal.

B

Archila-Lemus's CAT claim also fails. Applicants for CAT protection must show that it is "more likely than not" they will face intentional and wrongful "severe physical or mental pain or suffering . . . by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim." *Kamara v. Att'y Gen.*, 420 F.3d 202, 213 (3d Cir. 2005) (citations omitted).

The IJ must "consider all relevant record evidence," but "need not discuss every piece of evidence mentioned." *Green v. Att'y Gen.*, 694 F.3d 503, 508–09 (3d Cir. 2012)

6

(alterations and citation omitted). Though Archila-Lemus never sought police assistance, he claims the IJ failed to consider his evidence of government "complicity" in Mara-18 activity, which showed that "fil[ing] futile police reports [would] further endanger" Archila-Lemus and his family. Archila-Lemus Br. 53.

Archila-Lemus is correct that the IJ did not discuss country condition reports in the context of the CAT claim. But the IJ admitted the documents into evidence "in their entirety," App. 221, and noted elsewhere in his decision that he had reviewed "the country reports and the country conditions," App. 18. The IJ also recited testimony by Archila-Lemus and his brother that the police would not protect Archila-Lemus, suggesting he understood the concern.

Furthermore, the reports offered by Archila-Lemus attest to active, albeit ineffective, efforts by the Guatemalan government to combat gang violence. *See, e.g.*, App. 132–34 (2013 Report for the Department of Justice) (discussing government emphasis on "short-term law enforcement" to combat gangs and dismissals of police following "investigation [of the] infiltration of organized crime in state institutions"). Such efforts suggest the government is neither complicit in, nor willfully blind to, such violence as a general matter. Accordingly, the agency's denial of Archila-Lemus's CAT claim was not erroneous.

\*    \*    \*

For the reasons stated, we will deny Archila-Lemus's petition for review.

7