**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2083
_____

KARANPREET SINGH,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A215-537-131)
Immigration Judge: Nicholas A. Martz

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on March 28, 2022

Before: KRAUSE, BIBAS, and SCIRICA Circuit Judges

(Opinion filed: April 4, 2022)

_____

_____

OPINION[*]
_____

PER CURIAM

Karanpreet Singh, proceeding pro se, petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing his appeal of an Immigration Judge's ("IJ") order denying his applications for relief from removal. We will deny the petition for review.

Singh is a 20-year-old native and citizen of India. He entered the United States in 2018 at the age of 16. The Department of Homeland Security issued a notice to appear charging that he was subject to removal for being present in the United States without having been admitted or paroled. Through counsel, Singh conceded that he was removable and sought asylum, withholding of removal, and relief under the Convention Against Torture.

Singh, whose religion is Sikh, lived in Punjab, India and supported the Shiromani Akali Dal Amritsar ("SADA") Party.[1] Singh testified that his father joined the party, which fights for Sikh rights, in 2016. Although Singh was too young to join, he attended and promoted party rallies and camps. In January 2018 and in April 2018, following threats to his father, four Congress Party members assaulted Singh. They approached him in a party vehicle, beat him with batons and hockey sticks, and threatened to kill him. Singh did not know the

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] To the extent the parties refer to the Shiromani Akali Dal ("SAD") Party as the party that Singh supported, the administrative record reflects that he supported the SADA Party, a "splinter" group of the SAD Party. See A.R. at 285, 416, 436.

men, who demanded that he stop working for the SADA Party and join them. They also asked him to sell drugs. Singh lost consciousness during the second attack. He received medical treatment after both incidents.

Singh did not return to school after the second attack. He left India in May 2018. Singh believed that Congress Party members could find him if he moved to another part of India. Singh testified that in September 2018, Congress Party members beat up his father and asked where he was. Singh's family and others have told him that Congress Party members are still looking for him. The Congress Party is the ruling party in the state of Punjab, but it does not control the national government.

The IJ denied Singh's applications for asylum, withholding of removal, and relief under the CAT. The BIA affirmed the denial of relief on appeal. The BIA agreed with the IJ that, even if Singh established past persecution on account of his political opinion, the Government had rebutted the presumption of a well-founded fear of persecution because Singh could reasonably relocate.[2]

The BIA relied on the IJ's finding that Singh was harmed by private actors—members of the Congress Party—in his village. It noted that, to the extent Singh believed his assailants were associated with the government, the fact that the Congress Party controlled the Punjab government did not mean his attackers were government agents.

---

[2] The BIA did not affirm the IJ's ruling that Singh did not establish past persecution because he did not show that his harm was inflicted by the government or by a person the government was unable or unwilling to control. This ruling was based on a finding that Singh did not credibly testify about what he had told police after the first attack. The BIA decided that this determination was erroneous.

3

The BIA stated that the documentary evidence showed no general risk of harm to members of Singh's political party outside of Punjab other than to high-profile militants.

The BIA rejected Singh's argument that it would be easy for Congress Party members to find him outside of Punjab. It noted, among other things, that India has a population of more than 1.2 billion people and that the Congress Party is not the ruling party in the national government or in most of the country. The BIA found that the evidence did not support Singh's claim that Sikhs or supporters of his political party were subjected to surveillance.

The BIA also agreed with the IJ that it would be reasonable to expect Singh to relocate outside of Punjab. It noted that Singh is a young single man, that there is no evidence he has health problems, and that his native language of Punjabi is spoken in other areas. The BIA stated that there are Sikh communities throughout India, that there are no legal impediments preventing Sikhs from relocating, and that the evidence did not show widespread discrimination against Sikhs outside of Punjab. The BIA recognized that Singh might have difficulty finding a job or owning land in some parts of India, but it was not persuaded that these difficulties would make relocation unreasonable.

The BIA also affirmed the IJ's denial of relief under the CAT. The BIA agreed with the IJ's conclusion that Singh had not established that it is more likely than not that he would be tortured in India by, or with the consent or acquiescence of, a public official. This petition for review followed.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). We review factual challenges to the denial of Singh's applications for relief under the deferential substantial evidence

4

standard. See Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020) (involving CAT order); Gambashidze v. Ashcroft, 381 F.3d 187, 191 (3d Cir. 2004) (involving relocation finding). Under this standard, "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Singh disputes the BIA's decision that, even if he established past persecution, the Government rebutted the presumption of a well-founded fear of future persecution by showing that relocation was reasonable. As the BIA recognized, a person who has shown past persecution is presumed to face future persecution. Gambashidze, 381 F.3d at 191. The Government may rebut this presumption by showing that a person can avoid harm by relocating to another part of the country, and that it would be reasonable to expect the person to do so. Id. Under the regulation in effect at the time of Singh's hearing, an IJ considered the totality of the circumstances, which could include "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties." 8 C.F.R. § 1208.13(b)(3) (2020).

Singh contends that relocating is unreasonable because widespread human rights abuses exist in India. He asserts that Sikhs are subjected to discrimination and verbal and physical abuse, that Sikhs and SADA party members are subjected to surveillance, and that certain party leaders were killed in Punjab in 2020. See Pet'r's Brief at 11, 18.

The Government's evidence included a 2018 report by The Law Library of Congress addressing the feasibility of relocation of Sikhs and members of the SADA Party. See A.R.

5

at 276-85. The report reflects that there are no legal obstacles to relocation by Sikhs, that there are sizable Sikh communities outside of Punjab, and that relocation is feasible when a person is not of interest to central authorities. While the report notes that most sources address the relocation of Sikhs as opposed to SADA Party members, it states that only those members who are deemed high-profile militants are at risk. And the report reflects that Sikhs and SADA Party members are not tracked, with the possible exception of persons targeted by the Punjab police. Although some of the materials relied upon in the report were not recently published, other country conditions evidence is consistent with these materials or not to the contrary.[3]

As the BIA recognized, the report notes practical challenges to relocation by Sikhs, who are identifiable by their dress and Punjabi accent. Those who are unskilled and uneducated will have difficulty finding work and certain parts of the country would pose language barriers and limit the ownership of land. However, in light of the evidence of significant Sikh communities outside of Punjab and the lack of evidence showing that Singh is of interest to central authorities or the police, the record does not compel a conclusion contrary to that of the BIA.

Singh also argues that the BIA erred in affirming the denial of CAT relief because the police took no action when he went to them after the first attack. He disputes that he would not be tortured with the acquiescence of a public official. The BIA, however, did not

---

[3] Insofar as the BIA stated that the party Singh supported is allied with the Bharatiya Janata Party ("BJP"), which heads the coalition controlling the national government, the record reflects that the SAD Party, not the SADA Party, was allied with the BJP. A news article states that the SAD Party pulled out of the alliance in 2020. See A.R. at 503.

address the issue of acquiescence. It affirmed the denial of relief on the ground that Singh did not establish a likelihood of torture. The BIA explained that Singh's claim was undermined by the finding that he could relocate to avoid future harm. It acknowledged evidence of torture by Indian authorities, but noted that authorities were not pursuing Singh and general evidence of torture did not establish that he would more likely than not be tortured. The record does not compel a contrary conclusion. See also 8 C.F.R. § 1208.16(c)(3)(ii) (providing that evidence that an applicant could relocate is a factor to consider in determining the likelihood of torture); Singh v. Garland, 11 F.4th 106, 118 (2d Cir. 2021) (holding ability to relocate was dispositive of CAT claim).

Finally, Singh argues that the BIA erred in affirming the IJ's partial adverse credibility determination. However, as noted above, the BIA did not affirm this determination.

Accordingly, we will deny the petition for review.[4]

---

[4] Singh's renewed motion for appointment of counsel is denied.