

Opinions of the United
States Court of Appeals
for the Third Circuit

9-20-2006

# Kwee v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4542

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Kwee v. Atty Gen USA" (2006). *2006 Decisions.* Paper 432.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/432

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4542
_____

TJWIE HOO KWEE,
                                        Petitioner,
               vs.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent.

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
U.S. Department of Justice, Executive Office for Immigration Review
(BIA No. A96-260-081)
I.J. R.K. Malloy
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 15, 2006
_____

Before: SLOVITER, WEIS and GARTH, Circuit Judges

(Filed:  September 20, 2006)

_____

OPINION
_____

Garth, Circuit Judge:

        Tjwie Hoo Kwee petitions for review of the BIA's affirmance of an IJ's denial of

his application for asylum and withholding of removal.  We will grant the petition insofar as it challenges the outcome of Kwee's withholding of removal claim.

I

Kwee is a native and citizen of Indonesia, and is ethnically Chinese.  Kwee claims that throughout his life he has suffered in Indonesia because he is Chinese.  For example, he claims, people motivated by anti-Chinese sentiment have thrown stones at him, demanded money from him, and hit his car when he refused to give them money.

Kwee claims that at 11:30 p.m. on May 29, 1998, a mob of people armed with clubs, knives and other weapons gathered outside his home and electrical equipment store, stating that they were doing this because the home and store belonged to a Chinese person.  The mob allegedly tore the door off of his home and store using a vehicle and a chain, looted his home and the store, and then beat him with fists, feet, and clubs, and threw him in a river.[1]  Kwee sustained permanent injury to the little finger of his left hand (he cannot straighten it) and the lower part of his right leg (he has a scar).  During this incident, Kwee "thought [he] was dead already."  Administrative Record ("A.R.") 98.

Several months later, Kwee procured a temporary visa and fled to the United States.  He arrived on November 24, 1998, and remained in the country without permission after his visa expired.  Because he had overstayed his visa, the government

---

[1] This incident apparently occurred in the context of widespread attacks on Chinese Indonesians in 1998.  *See, e.g., Lie v. Ashcroft*, 396 F.3d 530, 532-33 (3d Cir. 2005).

placed Kwee in removal proceedings in April 2003. Kwee applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), claiming he had experienced persecution because of his Chinese ethnicity in Indonesia, and feared more of the same should he be returned to that country.

The IJ denied Kwee's asylum application because he filed it after the one-year filing deadline had passed, 8 U.S.C. §1158(a)(2)(B), and the IJ determined that Kwee failed to demonstrate changed or extraordinary circumstances which would justify a waiver of that deadline. 8 U.S.C. §1158(a)(2)(D).

The IJ held unqualifiedly that Kwee had suffered past persecution. She stated:

> The respondent has testified to an incident that the Court would certainly find to be persecution. Here is an individual who is awakened at 11:30 at night after he has gone to bed. He is at home. He hears loud noises outside of his house. He looks outside and sees a mob of people that he doesn't recognize. He watches them as they tie a chain to the front of his store and the other end to a truck, lift the door off the store and then enter, screaming and shouting, kill the Chinese, beat the Chinese. They destroy his store. His mother and brother were able to escape. He wasn't. He was beaten; he was kicked; and then it's not clear how they transported him to the river, which was behind his house, but after enduring the beatings and the kickings, these individuals tossed him into the river. Fortunately for this respondent, he is a swimmer and was able to swim to the bank of the river and survive. Had he been a shorter individual, or an individual who could not swim, surely he would have drowned. This is a traumatic incident. This is short of putting a weight on him, this almost amounts to a lynching and it was – *the Court finds that an incident like this certainly constitutes past persecution because the government could not control these individuals*.

A.R. 36-37. (emphasis added). She also acknowledged that, due to his age (53) "it is highly unlikely that he would be able to reestablish his life" in Indonesia, and thus "the past persecution . . . affects his future as well." She nevertheless denied his application

3

for withholding of removal because she found that Kwee had not presented evidence demonstrating that he would be persecuted on account of his ethnicity if he were returned to Indonesia. She further found that "[t]he government of Indonesia has passed certain laws now which improve the situation for ethnic Chinese citizens."[2]

The BIA "adopted and affirmed" the IJ's decision.

To the extent Kwee challenges the denial of his asylum application based on the determination that he filed it out of time, and that changed or extraordinary circumstances warranting waiver of the one-year filing deadline were absent, we lack jurisdiction to consider the challenge. 8 U.S.C. §1158(a)(3); *Sukwanputra v. Gonzales*, 434 F.3d 627, 635 (3d Cir. 2006). We have jurisdiction pursuant to 8 U.S.C. §1252, however, to consider Kwee's challenge to the denial of his withholding of removal claim.

Because the BIA affirmed the IJ's decision and adopted the IJ's rationale, we review the IJ's opinion. *See, e.g., Korytnyuk v. Ashcroft*, 396 F.3d 272, 286 (3d Cir. 2005). We review findings of fact, such as "findings regarding changed country conditions, under 8 U.S.C. §1252(b)(4)(B), which provides that 'administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Berishaj v. Ashcroft*, 378 F.3d 314, 322 (3d Cir. 2004). We have read

---

[2] The IJ also denied Kwee's claim for relief under the CAT. While Kwee's petition for review states generally that Kwee is challenging the BIA's "order of dismissal," Kwee's brief does not mention the denial of his CAT claim. We thus will review only the denial of his asylum and withholding of removal claims. *Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993) ("When an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal.").

this standard to require that the conclusion be supported by "substantial evidence." *Id.*

II

An alien in removal proceedings is entitled to withholding of removal to a country if his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. §1231(b)(3)(A). If the alien can show that he suffered past persecution in the proposed country of removal on account of one of these five grounds, he is entitled to a presumption that his life or freedom would be threatened in the future. 8 C.F.R. §208.16(b)(1); *Wang v. Gonzales*, 405 F.3d 134, 139 (3d Cir. 2005); *Gambashidze v. Ashcroft*, 381 F.3d 187, 191 (3d Cir. 2004). The government may rebut that presumption by showing by a preponderance of the evidence, *inter alia*, that there has been a fundamental change in circumstances such that the alien's life or freedom would not be threatened on account of one of the five grounds upon his removal to that country. 8 C.F.R. §208.16(b)(1)(i) & (ii); *Wang*, 405 F.3d at 139; *Berishaj*, 378 F.3d at 326.[3]

We will reverse the denial of Kwee's withholding of removal claim. As noted, the IJ found that Kwee had "certainly" suffered past persecution. Substantial evidence supports this finding. That is, we cannot find that a "reasonable adjudicator would be

---

[3] *Berishaj* deals with 8 C.F.R. §208.13(b) (relevant to eligibility for asylum) rather than 8 C.F.R. §208.16(b) (relevant to eligibility for withholding of removal), but we have previously acknowledged that these two regulations are "virtually identical." *Gambashidze*, 381 F.3d at 192 n.1.

compelled to conclude to the contrary."[4]

From the finding of past persecution there should have arisen a presumption that Kwee's life or freedom would be threatened in the future if he were returned to Indonesia. 8 C.F.R. §208.16(b)(1). Instead, the IJ denied Kwee's claim because the court "had not been presented with any evidence that [Kwee] would be persecuted on account of his ethnicity should he be returned to Indonesia." Again, however, the court *need* not have been presented with any such evidence. Rather, the court should have *presumed* future threat to life or freedom unless and until the government rebutted that presumption by showing by a preponderance of evidence that, for example, circumstances in Indonesia had changed fundamentally such that Kwee "would not be threatened on account of" his ethnicity if returned there. 8 C.F.R. §208.16(b)(1)(i)(A).

The IJ did note that the "government of Indonesia has passed certain laws now which improve the situation for ethnic Chinese citizens." Even if we generously assume that this statement was shorthand indicating that the IJ did, in fact, correctly presume that Kwee faced future threat to life or freedom, but found that the government had rebutted that presumption by demonstrating a fundamental change in circumstances,[5] we would

_____

[4] The abuse Kwee claims he suffered is more severe than that suffered by the petitioner in *Lie v. Ashcroft*, 396 F.3d 530, 533 (3d Cir. 2005) (denying petition for review in part because abuse Chinese Indonesian suffered incident to the robbery of her store was not sufficiently severe in *Lie* to constitute persecution).

[5] We are reluctant to give this benefit of the doubt, especially because the IJ did not mention the presumption that arises under 8 C.F.R. §208.16(b)(1) in her lengthy statement of the law governing Kwee's claim.

still reverse.

This is because the record as it now stands does not contain substantial evidence of changed circumstances. First, while the government did mention changed circumstances during its closing at the hearing before the IJ, *see* A.R. 131-132, it did not focus on them or point to anything specific in the record that demonstrated changed circumstances,[6] though the "burden of proof in a changed-country-conditions rebuttal is squarely on the government." *Berishaj*, 378 F.3d at 328. Moreover, "nothing in the country reports, or elsewhere in the record, rebuts [petitioner's] fear of persecution." *Id.* (reversing IJ's denial of asylum application based on changed circumstances for this reason). In fact, the documentary evidence in this case indicates that racial and ethnic minorities in Indonesia *do* still face copious challenges. The 2003 U.S. State Department Report ("Report"), for example, indicates that "[a]lthough the year started well for Chinese citizens . . . there were many instances of discrimination and harassment during the year," and went on to describe various challenges facing the Chinese-Indonesian community, including extortion and blackmail. Most relevant to Kwee's case, the Report states that "some Chinese citizens complained that the Government had not done enough to prosecute those responsible for the 1998 violence against them and their businesses."

The government urges us to uphold the IJ's decision on several bases not explored by the IJ, i.e., the possibility that Kwee could relocate internally in Indonesia and the fact

---

[6] Notably, in its brief to this court the government does not urge us to deny the petition for review on the basis of changed circumstances.

that several of Kwee's relatives still live in Indonesia.  We will not review these arguments.  It would, of course, "be manifestly inappropriate for us, rather than the Agency, to undertake that inquiry in the first instance."  *Berishaj*, 378 F.3d at 328 (*citing INS v. Ventura*, 537 U.S. 12 (2002)).  *See also  Wang v. Attorney General*, 423 F.3d 260, 270 (3d Cir. 2005) ("a 'simple but fundamental rule of administrative law [is] that a reviewing court, in dealing with a determination of judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.'") (*quoting SEC v. Chenery*, 332 U.S. 194, 196 (1947)).

For the foregoing reasons, we will grant Kwee's petition for review insofar as it challenges the denial of his withholding of removal claim.  We will remand to the BIA with instructions that it remand to the IJ for further proceedings in light of our opinion.  In those proceedings, the IJ should, in particular, make a point of considering whether the government has presented sufficient evidence to rebut the presumption that Kwee's life or freedom would be threatened in the future.