

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-8-2007

# Chen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2520

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Chen v. Atty Gen USA" (2007). *2007 Decisions.* Paper 974.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/974

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2520
_____

XING CHEN
        Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES


_____

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A97-745-019
(U. S. Immigration Judge: Honorable Roger A. Pauley)
_____

Argued April 23, 2007

Before: SCIRICA, *Chief Judge,* FUENTES, and ALARCÓN,[*] *Circuit Judges.*

(Filed:  June 8, 2007)

ROMBEN E. AQUINO, ESQUIRE (Argued)
Ferro & Cuccia
100 Lafayette Street
Suite 201
New York, NY 10013
        Counsel for Petitioner

_____

[*]The Honorable Arthur L. Alarcón, Senior Judge of the United States Court of
Appeals for the Ninth Circuit, sitting by designation.

1

KAREN L. GRIGSBY, ESQUIRE, (Argued)
ROBERT A. ZAUZMER, ESQUIRE
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA 19106

LYLE D. JENTZER, ESQUIRE
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
          Counsel for Respondent

———————

OPINION OF THE COURT
———————

ALARCÓN, *Circuit Judge*.

Xing Chen has petitioned for review of the dismissal of his appeal by the Board of

Immigration Appeals ("BIA") of the denial by the Immigration Judge ("IJ") of his

application for asylum, withholding of removal, and protection under the United Nations

Convention Against Torture ("CAT"). The IJ concluded that Mr. Chen failed to

demonstrate that he had been subjected to past persecution because Chinese Government

officers arrested and beat him based on a disgruntled co-worker's report that he was

spreading a Christian cult at his workplace.

The BIA concluded that Mr. Chen had suffered past persecution on account of the

accusation that he had organized a religious cult at his workplace. It also found, however,

2

that Mr. Chen's own testimony was sufficient to overcome the presumption that he had a well-founded fear of persecution, that there was a clear probability that he would be subjected to future persecution. It also concluded that he would not be subjected to torture if he were to return to China. We will affirm because we conclude that the substantial evidence supports the BIA's conclusion and does not compel a contrary one.

## I

## A

Mr. Chen is a citizen of the People's Republic of China. He was born on February 4, 1979 in Fuzhou, China. He was baptized as a Christian on July 15, 1998. He attended the Lang Qi Church on Sundays. He began attending this church with his grandmother when he was young. He started to work in a motorcycle repair shop in February 2000. Mr. Chen testified that "[o]n June 5, 2002 [he] was arrested by the police because of [his] belief in religion." Mr. Chen testified that his employer was also arrested and that he was "sold out" to the police by a fellow employee whose name was Wang Liao Ming. Mr. Chen had an argument with Mr. Ming a few days before he was arrested. Mr. Chen testified that Mr. Ming "was not happy that I tried to talk to him about religion, he wouldn't accept it. He said that we were talking about cult in the store."[1]

---

[1]In his asylum application Mr. Chen alleged that Mr. Ming worked at the motorcycle shop for a year and a half. Mr. Chen also alleged that Mr. Ming "always said something bad about the boss, acclaiming that the boss would be in big trouble sooner or later."

After his arrest, Mr. Chen was informed by the police that Mr. Ming had reported that Mr. Chen and his employer were "spreading the cult in the store." His employer was also a devout Christian. Mr. Chen and his employer spoke about Christianity and "the story of our Lord" at work. Mr. Chen testified that when his customers talked to him "about their difficulties they encounter about their business, so I couldn't help it so I talked to them about religion." In response to a request that he give an example of what he would say to his customers, Mr. Chen stated:

> Whenever they start complaining how difficult their living conditions was [sic] then I talked to them. Jesus was able to feed over 5,000 people with seven loafs [sic] of bread and two fish. Why couldn't you try and pray to the Lord, that the Lord's grace would help to improve your livelihood.

At the police station, Mr. Chen and his employer were interrogated separately. When asked about what he said to the customers about religion, Mr. Chen told them "this is the Lord's desire for me to help others solve their problems." Mr. Chen was asked whether his employer "often spread Christianity to other people and also that did he hold any meetings in the store." Mr. Chen told the police that "the owner was just trying to help solve some of their problems, they did not talk about any cult." Mr. Chen alleged in his asylum application that he was asked "who was behind me for spreading evil cult. I told them that I was only a normal Christian, and it was my duty to spread the Gospel."

The officers also interrogated him about his employer. The officers accused Mr. Chen's employer of spreading rumors against the Chinese government because of his relationship with relatives in Taiwan. Mr. Chen testified that he was beaten because the

4

police "wanted me to say the owner was talking about cult and anti revolution things." When asked whether his "boss [was] the main focus of the police, in other words, was the boss really the person who was being investigated," Mr. Chen answered: "Oh, yes." During one of these interrogations, Mr. Chen was beaten so severely with police clubs on his stomach that it caused him to vomit and suffer pain. The police also warned him to stop believing in God. (Br. of Pet'r 14.)

Mr. Chen was detained for twenty to thirty days. On July 2, 2002, his friends and relatives obtained his release from custody. After his release, Mr. Chen went to a doctor for a diagnosis and treatment because he felt a little pain. Mr. Chen testified "it was not really a serious injury."

Upon his release, Mr. Chen was directed to report to the local police station once a month. Each time he reported, he had "to tell them what happened to the owner of the store." Mr. Chen testified that the police "suspected my boss was spreading rumors against the Government, and also he had some contact with Taiwan." The time he spent on his monthly visits to the police station decreased over time. In his last visit, he was questioned for twenty minutes.

After he was released on July 2, 2002, Mr. Chen did not seek new employment. Mr. Chen was asked by his pastor to stop attending church services because he feared it would create trouble for the church with the Chinese government. He worked on his family's farm until he left China on October 8, 2003. He employed the services of a smuggler, or "snakehead," to obtain a passport for him. He entered the United States on

or about December 24, 2003.  Mr. Chen did not introduce any evidence that the police

have come to his home to look for him since he left China.

Mr. Chen testified that since May 24, 2004, he had attended a Christian church in

New York every Sunday.  He did not present any evidence that he was involved in

proselytizing activities after his arrival in the United States.  He testified that he believed

that if he returned to China he would "lose [his] freedom of belief" and be detained

"[b]ecause [he] did not continue to reporting."

**B**

Mr. Chen was arrested in Roma, Texas, on December 24, 2003, for entering the

United States illegally on that date.  In the Notice to Appear, Mr. Chen was charged with

arriving in the United States without being admitted or paroled after inspection by an

immigration officer in violation of 8 U.S.C. § 1182(a)(6)(A)(i).  At his removal hearing,

the IJ concluded that Mr. Chen was removable based on Mr. Chen's concession that he

was an alien present in the United States without being admitted or paroled.  The IJ

ordered that Mr. Chen be removed to China.

Mr. Chen filed an application for asylum, withholding of removal and protection

under CAT based on past persecution because of his Christian religious belief and

political opinion.  After conducting an evidentiary hearing, the IJ found that although Mr.

Chen's testimony was credible, the evidence was insufficient to demonstrate past

persecution because of Mr. Chen's religion.  Instead, the IJ found that Mr. Chen was

6

treated harshly in order to get information from him about his employer's political activities.

The IJ further concluded that Mr. Chen had failed to demonstrate that his fear of future persecution was "reasonable or well-founded." The IJ found that the Chinese police did not interfere with his attendance at Christian church services. The IJ also concluded that Mr. Chen had failed to provide sufficient evidence that a likelihood exists that he would be tortured in China upon his return. The IJ denied each of Mr. Chen's applications and ordered him removed to China.

Mr. Chen appealed from the IJ's decision denying his application for asylum, withholding of removal to China, and relief under CAT. In its opinion dismissing the appeal, the BIA made its own findings after reviewing the record. The BIA concluded that Mr. Chen had demonstrated past persecution because he was beaten and subjected to a lengthy detention after being interrogated regarding an informer's accusation that Mr. Chen belonged to a cult. The BIA also found that the rebuttable presumption of a well-founded fear of future persecution had been overcome. It found that "[t]he police questioned the respondent primarily about his employer and were not interested in the respondent after his release."

The BIA held that the evidence does not establish that Mr. Chen "has a well-founded fear or a clear probability that he would be subject to persecution on account of one of the five grounds enumerated in sections 208 and 24(b) of the Act." The BIA also concluded that the evidence was insufficient to demonstrate that Mr. Chen would be

7

subjected to torture if he is removed to China. Accordingly, the BIA dismissed the appeal from the IJ's order on April 3, 2006. Mr. Chen filed a timely petition for review on May 1, 2006. This Court has jurisdiction pursuant to 8 U.S.C. § 1252(b)(2) and (d).

## II

### A

Mr. Chen contends that his petition for review of the BIA's decision should be granted because the Government failed to meet its burden of overcoming the presumption of a well-founded fear of future persecution in light of the BIA's finding that Mr. Chen was subjected to past persecution because of his Christian religion.[2] He argues that he holds a well-founded fear that he will be persecuted if removed to China due to the fact that he is a Christian, and because he fled China and missed his monthly meetings with the police.

The Government has not contested the BIA's finding that Mr. Chen was subjected to past persecution during his interrogation by the police concerning his Christian beliefs. Instead, it maintains that "[s]ubstantial record evidence supports the BIA's findings that Chen did not have a well-founded fear of future persecution because of his Christianity." (Br. for Resp't 10.)

Where the BIA issues its own decision on the merits, we review its decision and not that of an IJ. *Kayembe v. Ashcroft*, 334 F.3d 231, 234 (3d Cir. 2003). "We must

---

[2]Mr. Chen does not seek review of the BIA's finding that he failed to present substantial evidence regarding his claim for protection under CAT.

uphold the BIA's factual findings if they are supported by substantial evidence." *Singh v. Gonzales*, 406 F.3d 191, 195 (3d Cir. 2005). "Board determinations are upheld if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Guo v. Ashcroft*, 386 F.3d 556, 561 (3d Cir. 2004) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]" 8 U.S.C. § 1252(b)(4)(B).

An asylum applicant must establish that (1) he or she is outside his country of nationality; (2) he or she is "unable or unwilling" to return to and avail himself of the protection of that country; (3) such inability or unwillingness is "because of persecution or a well-founded fear of persecution," and (4) such persecution is "on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42). "A showing of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution." *Toure v. Attorney Gen. of U.S.,* 443 F.3d 310, 317 (3d Cir. 2006). The Government can overcome the presumption by demonstrating either that (1) "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality. . . on account of race, religion, nationality, membership in a particular social group, or political opinion" or (2) "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country . . . and . . . it would be reasonable to expect the applicant to do so." 8 C.F.R. § 1208.13(b)(1)(i). The

9

Government must make this showing by a preponderance of the evidence. 8 C.F.R. § 1208.13(b)(1)(ii). "An applicant has a well-founded fear of future persecution if he shows that he has a subjectively genuine fear, and that a reasonable person in his circumstances would fear persecution if returned to his native country." *Voci v. Gonzales*, 409 F.3d 607, 613 (3d Cir. 2005).

The BIA found that the evidence regarding the country conditions in China indicated that a reasonable person in Mr. Chen's position would not fear future persecution as a Christian. In *Zubeda v. Ashcroft*, 333 F.3d 463 (3d Cir 2003), this Court held that country reports are "'the most appropriate and perhaps the best resource' for 'information on political situations in foreign nations.'" *Id*. at 478 (quoting *Kazlauskas v. INS*, 46 F.3d 902, 906 (9th Cir. 1995)). Here, the BIA relied on a report authored by the Department of State, which focused on asylum claims and country conditions in China. The background evidence in the report stated that China currently allows Christian churches in the country, so long as they are registered. Moreover, Mr. Chen testified that his parents, grandmother and former minister are all currently practicing Christians in China.

Mr. Chen argues for the first time in his brief that he fears persecution because "Chen's troubles with the police arose out of his proselytizing in his workplace, *outside* of the accepted, registered house of worship." (Br. of Pet'r 12-13.) Mr. Chen did not testify that he was proselytizing at his workplace. Instead, Mr. Chen stated that his

10

employer "was just trying to help solve some of their problems, they did not talk about any cult."

The term "proselytize" is defined as "to induce someone to convert to one's faith" and "to recruit someone to join one's party, institution, or cause[.]" *Merriam-Webster's Collegiate Dictionary* 998 (11th ed. 2004). Mr. Chen testified that he told stories from the bible to comfort persons who were troubled by their personal problems. This conduct does not equate to an attempt to "induce" people to "convert" to his faith. Mr. Chen did not testify that he converted anyone to his Christian beliefs. The record also shows that Mr. Chen became a member of a Christian church in the United States in 2004. He did not testify that he has proselytized while he has been in the United States. He also did not testify that he intended to proselytize if he is removed to China.

The country report and Mr. Chen's own testimony provide substantial evidence to rebut the presumption of a well-founded fear of future persecution. The police had a mixed motive for arresting Mr. Chen. He was accused of "spreading a cult" and he was suspected of having information concerning his employer's alleged anti-communist political views. After Mr. Chen's repeated denials of "spreading a cult," it became clear that his employer's suspected political activities and his connection with Taiwanese relatives was the real basis for his arrest and lengthy detention.

After his release, the police's interest in his Christian religion waned. Instead, he was asked to respond to questions regarding whether his employer "was spreading rumors against the Government." This type of inquiry also was abandoned after a time, and the

11

questions were limited to Mr. Chen's personal activities. The length of his visits to the police station also decreased. The last visit lasted twenty minutes. After his release, Mr. Chen remained in China from July 2, 2002 until October 8, 2003. During that time, the police did not arrest or detain him further.

There is substantial evidence in the record that would support an inference that Mr. Chen was primarily a person of interest due to his possible knowledge of his employer's political views. It also is sufficient to support an inference that the police would not continue to be interested in pursuing and arresting him upon his removal to China since he has not worked for his former employer for over three years.

Mr. Chen has failed to demonstrate he has an individualized risk of future persecution or that there is a pattern or practice of persecution of Christians in China. In light of the evidence, a reasonable adjudicator would not be compelled to conclude to the contrary of the BIA's decision. The BIA did not err in denying his application for asylum.

**B**

Mr. Chen also argues that the BIA erred when it denied him withholding of removal. To be eligible for withholding of removal to a particular country, an alien must demonstrate that his "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An individual may demonstrate such a threat either by establishing past persecution, which creates a rebuttable presumption of a future threat,

12

or by establishing "it is more likely than not" that he would be persecuted in the future on account of one of the protected grounds.  8 C.F.R. §§ 1208.16(b)(1)-(2).  "To qualify for withholding of removal, an alien 'must show a clear probability that upon his return to [the country of removal]' he would be persecuted."  *Gambashidze v. Ashcroft,* 381 F.3d 187, 191 (3d Cir. 2004) (quoting *Li Wu Lin v. INS*, 238 F.3d 239, 244 (3d Cir. 2001)).

The same reasons for denying Mr. Chen's asylum application apply here.  Mr. Chen has failed to provide sufficient evidence that "more likely than not" he would be persecuted on account of his religion if he returned.  The evidence shows that China allows registered churches, thus, there is no evidence that his life or freedom would be threatened in China because he is a Christian.  Further, the evidence indicates that the police questioned Mr. Chen primarily about his employer's political views and his affiliation with Taiwan.  Mr. Chen has not demonstrated a "clear probability" that upon his return to China, he would suffer persecution due to the fact that he previously fled the country.  A reasonable adjudicator would not be compelled to conclude to the contrary of the BIA's decision that Mr. Chen has not demonstrated that he is entitled to withholding of removal.

For the foregoing reasons, we will deny the petition for review.