**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 10, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

AMADOU THIAM,

      Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

      Respondent.

No. 12-9574
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **McKAY** and **O'BRIEN**, Circuit Judges.

---

Amadou Thiam, a native and citizen of Senegal, seeks review of a final order

of removal issued by the Board of Immigration Appeals (BIA) affirming the decision

of the Immigration Judge (IJ) denying his applications for asylum and restriction on

removal under the Immigration and Nationality Act (INA) and for protection under

the United Nations Convention Against Torture (CAT). Exercising jurisdiction under

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

8 U.S.C. § 1252(a), we affirm in part, reverse in part, and remand for further proceedings.

## I. Background

Thiam is from the Casamance region of Senegal, where there is a long-running violent civil conflict between the Senegalese government and the Movement of Democratic Forces of Casamance (MFDC), which seeks to secure Casamance's independence from Senegal. Thiam is Mandingo,[1] which is an ethnic minority group in Casamance and Senegal and is not the ethnic group of the majority of the MFDC. According to Thiam, he opposes the rebellion by the MFDC and does not want Casamance to be independent of Senegal.

On May 12, 2005, while working at his farm in Bignona, in the Casamance region, MFDC rebels confronted Thiam and demanded that he join the rebellion. He refused to do so and was brutally beaten. The next day, MFDC rebels attacked Bignona, prompting the Senegalese army to shell and defend the area. Thiam attempted to flee to Ziguinchor, the capital of Casamance, but was apprehended by Senegalese security forces at a military checkpoint. Because he was still visibly injured from his beatings by the MFDC, Senegalese military forces suspected Thiam was part of the MFDC rebel forces and took him into custody. The soldiers detained Thiam for two days, stripped him of his clothing, collected his identification

---

[1] The record provides two spellings for Thiam's ethnic group: 1) Mandingo and; 2) Mandingue. We will use Mandingo.

documents, and accused him of being part of the MFDC. While interrogating him, the soldiers severely kicked, cut, and beat Thiam because he refused to admit to a connection with the MFDC. The soldiers finally released Thiam after he agreed to sign a document renouncing any affiliation with the MFDC. But the soldiers warned Thiam that they would follow his activities and whereabouts and they threatened to kill him if they did not like what he was doing.

Thiam then moved to neighboring Gambia and ultimately entered the United States illegally in July 2006. He filed his application for asylum in June 2007 claiming, as relevant here, that he had been persecuted in Senegal by both MFDC rebels and Senegalese military forces on account of an imputed political opinion.[2] The Department of Homeland Security (DHS) denied the application in December 2007 and initiated removal proceedings. In proceedings before an IJ, Thiam conceded removability and applied for asylum, restriction on removal, and CAT protection. After a merits hearing, the IJ concluded Thiam failed to establish past persecution by either the MFDC rebels or the Senegalese military forces. Alternatively, the IJ found that even if past persecution had been established, internal relocation to other parts of Senegal – such as Dakar, the capital of Senegal – was a reasonable alternative. Accordingly, the IJ found Thiam removable and denied his requests for relief. The BIA affirmed in part and dismissed in part. The BIA

---

[2]    Thiam also claimed persecution based on membership in a particular social group, but he does not assert this ground on appeal.

affirmed the IJ's finding that Thiam did not establish past persecution by MFDC rebel forces but concluded Thiam established past persecution by the Senegalese military forces. But it nevertheless affirmed the IJ's denial of asylum and restriction on removal because Thiam could avoid future persecution by relocating to another part of Senegal other than Casamance. It also affirmed the denial of CAT protection. This appeal followed.

## II.    Discussion

On appeal, Thiam argues that he is eligible for asylum and restriction on removal because the BIA erred in finding that he could reasonably relocate to another part of Senegal. He claims this was erroneous because the presumption of a fear of future persecution was not rebutted with sufficient evidence and the BIA did not adequately consider the factors identified in 8 C.F.R. § 1208.13(b)(3). He further claims he is eligible for protection under the CAT.

### A. Standard of Review

"Where, as here, a single BIA member issues a brief order, affirming . . . the IJ's order . . . such an order constitutes the final order of removal . . . and thus this Court will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012) (alterations in original) (internal quotation marks omitted). While we review the BIA's decision, not the IJ's, "we may consult the IJ's opinion to the

extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007).

"[W]e review the [BIA's] findings of fact under the substantial evidence standard." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). Under this standard, "[t]he BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004) (internal quotation marks omitted). We review the BIA's legal conclusions de novo. *Elzour*, 378 F.3d at 1150. "When the BIA has failed to address a ground that appears to have substance, we should not reverse on that ground, but instead remand." *Rivera-Barrientos*, 666 F.3d at 645.

**B. Asylum and Restriction on Removal**

To be eligible for asylum, an alien must show that he is a "refugee" under the INA which he may do by demonstrating that he has suffered past persecution or has a well-founded fear of future persecution based on a statutorily protected ground. *See* 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13; *Rivera-Barrientos*, 666 F.3d at 645-46. Those protected grounds include, as relevant here, political opinion. *See* 8 U.S.C. § 1101(a)(42)(A). Upon establishing refugee status, the grant or denial of asylum is discretionary. *See Krastev v. I.N.S.*, 292 F.3d 1268, 1271 (10th Cir. 2002).

Outside of the asylum context, an alien may also seek restriction on removal under 8 U.S.C. § 1231(b)(3) to avoid persecution in his home country. An alien may not be removed to a country "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's . . . political opinion." *Id*. To establish that his life or freedom would be threatened, "an applicant must establish a clear probability of persecution on account of one of the statutorily protected grounds . . . . A 'clear probability' means the persecution is more likely than not to occur upon return." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1202 (10th Cir. 2006) (internal quotation marks omitted). Whereas a grant of asylum is discretionary, "restriction on removal is granted to qualified aliens as a matter of right." *Ismaiel v. Mukasey*, 516 F.3d 1198, 1204 (10th Cir. 2008).

The BIA affirmed the IJ's conclusion that Thiam failed to establish past persecution by the MFDC rebels on account of a protected ground.[3] The BIA disagreed, however, with the IJ's conclusion that Thiam did not establish persecution by the Senegalese government on account of a protected ground. The BIA found that the political opinion attributed to Thiam and his "suspected support for the MFDC" "was a central reason why members of the Senegalese military forces were motivated to harm him." Admin. R. at 4. The BIA therefore found that Thiam had suffered past persecution on account of an imputed political opinion.

---

[3]     Thiam does not appeal this finding.

- 6 -

This showing of past persecution created a rebuttable presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b)(1). The government could rebut this presumption by showing by a preponderance of the evidence that Thiam could avoid future persecution by relocating to another part of Senegal and that "under all the circumstances, it would be reasonable to expect [him] to do so." *Id*. § 1208.13(b)(1)(i)(B). By the same token, because Thiam established past persecution, this created a rebuttable presumption that internal relocation was unreasonable. *See id*. § 1208.13(b)(3)(ii). The inquiry then on internal relocation is two-fold: 1) whether the applicant can safely relocate; and 2) whether it would be reasonable to expect the applicant to do so. *See Gambashidze v. Ashcroft*, 381 F.3d 187, 192 (3d Cir. 2004) ("[T]he regulation envisions a two-part inquiry: whether relocation would be *successful* [in escaping persecution], and whether it would be *reasonable*."); *Knezevic v. Ashcroft*, 367 F.3d 1206, 1214-15 (9th Cir. 2004) (addressing first whether applicants could safely relocate and, if so, whether relocation was reasonable).

In evaluating whether the government met its burden in overcoming the presumption of future persecution, the BIA relied, in part, on excerpts from a 2009 State Department Country Report on Senegal. It observed that, according to the Country Report, 1) ethnic groups in Senegal have coexisted relatively peacefully; 2) the Senegalese government generally has respected its citizens' right of freedom of movement within the country; and 3) the Senegalese government has established

support for internally displaced persons from the Casamance conflict. *See* Admin. R. at 5.

To the extent that this evidence addresses whether internal relocation is safe, it nevertheless fails to address Thiam's particular circumstances of possible persecution at the hands of the Senegalese government on account of his imputed political opinion if he relocates. As Thiam accurately argues, in determining the efficacy of finding a safe haven through internal relocation, the issue presented to the BIA was not whether, in general, people displaced by the Casamance conflict may seek assistance from the Senegalese government, but whether Thiam, who had been persecuted by the Senegalese government, could safely and reasonably relocate within Senegal to avoid future persecution by government forces.

We note that the government did not submit any documentary evidence to overcome the presumption of future persecution. We recognize that, in the context of country conditions, a State Department report "may be probative in a well-founded fear case." *Krastev*, 292 F.3d at 1276-77. But "we have cautioned that use of such [a] report does not substitute for an analysis of the facts of [the] applicant's individual circumstances." *Id*. at 1277 (internal quotation marks omitted). A similar caution applies in determining whether internal relocation would be effective and reasonable. Yet, "[t]he BIA's conclusory reliance on the Country Report reflects no consideration of the individualized circumstances facing [Thiam]." *Id*. at 1276. Accordingly, this evidence, standing alone, does not support a finding that Thiam

could safely relocate to other parts of Senegal and is insufficient to meet the government's burden.

But in addition to the Country Report, the BIA relied on testimony elicited from Thiam's expert, Martin Evans, Ph.D., on the government's cross-examination. The BIA stated, citing portions of Evans' testimony, that members of Thiam's ethnic group, the Mandingo, have lived in areas of Senegal outside of Casamance, including Dakar. *See* Admin. R. at 5. And it further stated that neither the MFDC nor the Senegalese government has directly attacked Dakar, though some Mandingo from Casamance live there. *See id.* Accordingly, based on this evidence, the BIA rejected Thiam's claim that if he relocated to Dakar and relied on the Dakar community for support, he would be identified as from Casamance and falsely accused by the Senegalese government as an MFDC rebel. *See id.* And in further support, the BIA cited to Evans' testimony that he was unaware of any Mandingo living in Dakar who had been persecuted by the Senegalese government for any reason. *See id.* at 5, 153.

Given our consideration of this evidence, we conclude that it substantially supports that Thiam could safely relocate to Dakar. But we are unable to conclude that the BIA's determination that the government met its burden in establishing that Thiam could reasonably relocate is supported by substantial evidence. *See Knezevic*, 367 F.3d at 1214 (determining that internal relocation was safe but concluding it was unreasonable); *Gambashidze*, 381 F.3d at 193-94 (concluding that substantial evidence did not support BIA's conclusion that internal relocation would be

successful in avoiding future persecution).  The BIA stated this conclusion summarily and then, after consideration of the record evidence, it found that "there is no evidence other than [Thiam's] speculation that he would be singled out for harm rising to the level of persecution if returned to Senegal."  Admin. R. at 5.

But this analysis is incomplete because, as we previously indicated, internal relocation involves a two-part inquiry of determining whether relocation is safe, and if so, reasonable.  The BIA failed to consider and apply the factors identified in 8 C.F.R. § 1208.13(b)(3) in determining whether it would be "reasonable" for Thiam to relocate.  That regulation requires that adjudicators consider the following factors:

> whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties.

*Id*.  Those factors are not necessarily determinative though of whether it would be reasonable for the applicant to relocate.  *Id*.

Although the BIA's recognition that there have not been direct attacks in Dakar by the Senegalese government may, to an extent, reflect its consideration of the harm Thiam might possibly face in Dakar, the BIA did not address the other factors relevant to a reasonableness determination.  The government's argument on appeal that there is no evidence that the BIA did not consider these factors is wholly unpersuasive.

- 10 -

And, importantly, evidence presented by Thiam demonstrated that internal relocation to Dakar would be unreasonable. For example, Thiam testified that he does not have family in Dakar or other parts of Senegal, nor does he know any Mandingo living in Dakar. Further, Evans testified that the lack of relatives or other kin ties would make it extremely difficult for Thiam to integrate into the community in Dakar. Yet the BIA's opinion does not reflect that it considered these social and cultural constraints or other determinative factors for internal relocation.

In sum, the BIA failed to adequately consider whether it was reasonable for Thiam to internally relocate. Accordingly, we remand this matter to the BIA for further proceedings not inconsistent with this opinion to determine the reasonableness of internal relocation. *See*, *e.g.*, *Arboleda v. U.S. Att'y Gen.*, 434 F.3d 1220, 1226-27 (11th Cir. 2006) (per curiam) (holding that BIA's failure to adequately consider reasonableness factors identified in 8 C.F.R. § 1208.13(b)(3) was reversible error); *Hagi-Salad v. Ashcroft*, 359 F.3d 1044, 1048-49 (8th Cir. 2004) (remanding to the BIA for a reasonableness determination based on factors in 8 C.F.R. § 1208.13(b)(3)); *Knezevic*, 367 F.3d at 1214-15 (same). *See also Gambashidze*, 381 F.3d at 192 ("Thus the regulation envisions a two-part inquiry: whether relocation would be successful, and whether it would be reasonable").

Regarding Thiam's restriction on removal claim, like his asylum claim, the BIA concluded that the presumption of future persecution had been rebutted through internal relocation and, that Thiam had not otherwise demonstrated that his life or

freedom would be threatened upon return to Senegal. Given our disposition of Thiam's asylum claim, however, we also remand his restriction on removal claim for further consideration. *See* 8 C.F.R. § 208.16(b)(1)(i) (providing that presumption of future threat to life or freedom that arises upon showing of past persecution in country of removal may be rebutted by showing it is reasonable for applicant to relocate internally).

## C. Convention Against Torture

Thiam also seeks review of the BIA's denial of his CAT claim. The CAT "prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (internal quotation marks and brackets omitted); *see also* 8 C.F.R. § 208.18(a)(1). CAT protection does not require that Thiam show he would be tortured on the basis of a statutorily protected ground. *See Cruz-Funez*, 406 F.3d at 1192.

Thiam argues he will be tortured based on his imputed political opinion. The BIA concluded that Thiam's speculation that he may be harmed upon return to Senegal is insufficient to establish a clear probability of torture by a public official or with the acquiescence of a public official. We have reviewed the record and determine that the BIA's conclusion is supported by reasonable and substantial evidence and, as such, we are not compelled to conclude to the contrary.

### III. Conclusion

We affirm the BIA's denial of CAT protection.  We reverse the denial of asylum and restriction on removal and remand for further proceedings consistent with the views expressed herein.

Entered for the Court


Mary Beck Briscoe
Chief Judge

12-9574, *Thiam v. Holder*

**O'BRIEN,** J, concurring in part and dissenting in part

I concur in the denial of CAT protection. I agree with the majority that changed conditions in Senegal have made it safe for Thiam to relocate there. I disagree that it would be unreasonable to expect him to do so. Accordingly I dissent from the reversal and remand.

The immigration judge (IJ) concluded Thiam had not suffered past persecution. As an alternative holding the IJ concluded that even if Thiam had suffered past persecution it was safe and reasonable for him to relocate in Senegal.

> As shown above the Court does not believe that the respondent has met his burden to show that whatever mistreatment he suffered was on account of his political opinion, either real or imputed. With reference to race the record does show that the respondent belongs to the Mandingo tribe which is a minority group in Senegal. The respondent has indicated that it would be difficult for him to relocate because of his race. The Department of State, however, paints a different picture. The Department of State's *Country Reports* for Senegal most recently indicates that "the country's many ethnic groups have coexisted relatively peacefully." (Exhibit 4, page 368). The Court does not believe that the respondent has established that the rebels or the government would be interested in harming the respondent because of being a Mandingo.

> The Court also believes that even if there had been past persecution shown on this record, the record also shows that internal relocation is a reasonable alternative for the respondent. The Court is aware that had there been a showing of past persecution that the Government would bear the burden to show that internal relocation is reasonable and that it is presumed that internal relocation is not reasonable. 8 C.F.R.1208.13(b)(3)(ii). Respondent's expert felt it would be difficult to relocate to Dakar, which would be the most likely place the respondent would go. However, the expert did

acknowledge that Mandingos do live in the north of Senegal and they live as migrants in Dakar. There would be some difficulty in the respondent relocating to a place where he does not have a job or any relatives to help him relocate. However, that level of difficulty is common in any sort of internal relocation and does not indicate that relocation would be "unreasonable." Again the Department of State indicates that relocation would be a viable alternative for the respondent. "The Constitutional law provide for freedom of movement within the country . . . and the Government generally respected these rights . . . in practice." (Exhibit 4, page 362). The Department of State also goes on to say that the government has established support for internally displaced persons from the Casamance conflict (*Id.*). Accordingly it does seem to this Court that internal relocation has been established as a reasonable alternative for the respondent. For that reason, then, the respondent would not be granted asylum.

IJ Decision at 10–11.

The BIA disagreed with the IJ in one respect; it concluded past persecution had been established. But it affirmed on the IJ's alternative reasoning:

Nevertheless, the Immigration Judge properly denied the respondent asylum, concluding in the alternative that the Department of Homeland Security ("DHS") met its burden to rebut the presumption of future persecution. We agree with the Immigration Judge's determination that the DHS has met its burden of showing by a preponderance of the evidence that the respondent can reasonably relocate under all the circumstances to another area in Senegal other than Casamance in order to avoid future persecution by military forces or the MFDC (I.J. at 6, 10-11; Tr. at 82, 90). *See* 8 C.F.R. §§ 1208.13(b)(l), (3)(ii); *see also INS v. Orlando Ventura*, 537 U.S. 12, 18 (2002) (an individual who can relocate safely within his home country ordinarily cannot qualify for asylum).

The respondent was arrested by Senegalese security forces at a military checkpoint and mistreated by the military in 2005 after fighting between the government and the MFDC escalated in Casamance (I.J. at 9; Exhs. 2, 3d; Tr. at 32). The Immigration Judge relied on the 2009 *Senegal Country Reports on Human Rights Practices* - which noted, for example, that ethnic groups in Senegal have coexisted relatively peacefully, and that the government

2

generally respected its citizens' right for freedom of movement within the country (I.J. at 10-11; Exh. 4i). Members of the respondent's ethnic group have lived in other areas of Senegal outside of Casamance (I.J. at 6, 11; Tr. at 90).

The respondent asserts that relying on the wider Dakar community for support would result in his being identified as from the Casamance region by the MFDC, or being falsely accused as a rebel by the government. Yet the Immigration Judge correctly found that there has not been any direct attacks by the MFDC or the government in the capital city even though some people from Casamance already live there (I.J. at 6; Tr. at 90-91). Moreover, the Immigration Judge correctly observed that the Senegalese government has established support for internally displaced persons from the Casamance conflict (I.J. at 11; Exh. 4). Thus, there is no evidence other than the respondent's speculation that he would be singled out for harm rising to the level of persecution if returned to Senegal.

BIA Decision at 2-3.

The majority writes: "Given our consideration of this evidence, we conclude that it substantially supports that Thiam could safely relocate to Dakar." Maj. Op. at 9. Then it discusses the core of its decision: "But we are unable to conclude that the BIA's determination that the government met its burden in establishing that Thiam could reasonably relocate is supported by substantial evidence." *Id.* That is because the BIA did not adequately discuss the 8 C.F.R. § 1208.13(b)(3) factors. But the IJ clearly considered them, saying: "There would be some difficulty in the respondent relocating to a place where he does not have a job or any relatives to help him relocate. However, that level of difficulty is common in any sort of internal relocation and does not indicate that relocation would be 'unreasonable.'" IJ Decision at 11. I take the IJ's words to mean that

3

moving to Dakar might be inconvenient, perhaps even difficult, but that does not make a move unreasonable. I heartily agree, particularly for one who is young and has experience living in difficult circumstances. At the time of the hearing, April 2010, Thiam was 32.[1] After some troubles with the MFDC in March 1998, Thiam, then 21, went with his family to Gabon where he remained until 2003. Surely a man in his early thirties, who had lived in a foreign country for several years, could make his way in the capital and largest city of his own country. According to the IJ, the BIA and all members of this panel, the danger of persecution he had previously suffered had abated. Thiam may prefer to stay in this country, but he has no right to do so unless it would be dangerous and unreasonable for him to return to his own country. It is neither. The subtle, but critical, distinction between being justifiably unable to relocate and preferring not to relocate was appropriately drawn by the IJ and the BIA. For that reason I respectfully dissent from the reversal of the BIA's decision.

---

[1] According to his affidavit Thiam was born in 1977.

4