**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2804
_____

C.A.H.; F.A.A.; K.L.A.A.; Y.A.A.A.; E.A.A.,
Petitioners

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of Orders from
The Board of Immigration Appeals
Agency Nos. A208-311-923, A208-311-924,
A208-311-925, A208-311-926, A208-311-927
Immigration Judge: Hon. John B. Carle
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 24, 2018

_____

Before: MCKEE, SHWARTZ, and NYGAARD, Circuit Judges.

(Filed: April 23, 2019)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

SHWARTZ, <u>Circuit Judge</u>.

C.A.H.[1] petitions for review of a decision of the Board of Immigration Appeals ("BIA") denying her application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Because the BIA correctly concluded that C.A.H. is ineligible for relief, we will deny her petition.

I

C.A.H., a citizen of Mexico, lived in El Salto, Guerrero, Mexico, and worked as a vendor in a nearby market. According to C.A.H., "strange things began happening" in El Salto and surrounding towns, A.R. 223, after a group known as the "Barredoras" became the "effective" government of El Salto, A.R. 224. The Barredoras engaged in violent acts and collected "taxes" that allowed individuals and businesses to operate without their interference, A.R. 224. During this time, one of C.A.H.'s nephews was kidnapped, but before she could pay the ransom, the kidnappers killed him. C.A.H. believes the Barredoras murdered him "to send a message to everyone else in the town not to hesitate in cooperating with the[ir] demands[.]" A.R. 226. The Barredoras also murdered another nephew of C.A.H. after he refused to pay their tax. Years later, C.A.H. received an anonymous phone call demanding the tax—which she had stopped paying—and warning her that "if [she] did not want to die, [she] would have to pay him." A.R. 226. Sometime after she received this call, her brother was kidnapped, and before she could pay his

---

[1] Pursuant to our order granting the motion to redact Petitioners' names, we refer to Petitioners by their initials only.

ransom, he was murdered. C.A.H. believes that her nephews and brother were murdered "because they were not obedient to those taking over the area." A.R. 217.

On a separate occasion, a man came to her home and demanded money. When C.A.H. responded that she did not have any money, he hit her, pulled her hair, and told her that he would kill her. C.A.H.'s then ten-year-old daughter, K.L.A.A., tried to intervene but the man stepped on her hand, damaging a finger, and punched her in the left eye, which required stiches.

Shortly after this incident, C.A.H. and her four minor children entered the United States without valid documentation, and the Department of Homeland Security commenced removal proceedings under 8 U.S.C. § 1182(a)(7)(A)(i)(I). C.A.H. conceded removability but sought asylum on the basis of her political opinion and membership in a particular social group of "villagers in Mexico who refuse to go along with the de facto government," A.R. 199, withholding of removal, and CAT relief.[2] In support of her application, C.A.H. and K.L.A.A. testified and C.A.H. submitted, among other things, the State Department's travel warning to U.S. citizens regarding Mexico and articles regarding violence in Guerrero.

The IJ found C.A.H. and K.L.A.A. to be credible witnesses, but denied C.A.H.'s requests for asylum, withholding of removal, and CAT relief. Specifically, the IJ found

---

[2] C.A.H.'s four minor children, F.A.A., K.L.A.A., Y.A.A.A., and E.A.A., are included in her application for asylum as potential derivative beneficiaries but cannot seek derivatively, and do not seek independently, withholding of removal or CAT relief. See Warui v. Holder, 577 F.3d 55, 58 (1st Cir. 2009) ("Unlike the statute governing asylum applications, 8 U.S.C. § 1158, the statutes and regulations covering withholding of removal and the CAT do not contain provisions for derivative claims . . . .").

that C.A.H. neither suffered past persecution nor was targeted on account of a statutorily protected ground. In addition, the IJ found that C.A.H.'s proposed particular social group of "villagers in Mexico who refuse to go along with the de facto government" lacked the requisite particularity, social distinction, or common immutable characteristics required for a particular social group. A.R. 78. The IJ also determined that C.A.H. had neither established a well-founded fear of future persecution nor been tortured. In addition, the IJ found that she could relocate to another part of Mexico. C.A.H. appealed to the BIA.

The BIA agreed with the IJ that (1) the totality of the harm C.A.H. suffered does not rise to the level of persecution; (2) C.A.H. was not harmed on account of a protected ground, as the Barredoras were motivated by criminal intentions; (3) internal relocation is reasonable because C.A.H. specifically fears the Barredoras in Guerrero and her evidence does not suggest that "violence is so pervasive that there are no regions in Mexico where [C.A.H.] could internally relocate," A.R. 5; (4) C.A.H. is ineligible for withholding of removal, because she has not met the lower standard for asylum; and (5) C.A.H. is ineligible for CAT relief because the IJ properly determined that she did not previously suffer harm rising to the level of torture and she could reasonably relocate to another part of Mexico. The BIA therefore dismissed the appeal.

C.A.H. petitions for review.

II[3]

---

[3] The IJ had jurisdiction over C.A.H.'s immigration proceedings under 8 C.F.R. § 1208.2, and the BIA had jurisdiction over the appeal pursuant to 8 C.F.R. §§ 1003.1(b) and 1240.15. We have jurisdiction over final orders of the BIA under 8 U.S.C. § 1252.

A

To be eligible for asylum under the Immigration and Nationality Act, an alien "must demonstrate either (i) proof of past persecution, or (ii) a well-founded fear of future persecution in his home country 'on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Sesay v. Att'y Gen., 787 F.3d 215, 218-19 (3d Cir. 2015) (quoting 8 U.S.C. § 1101(a)(42) (definition of refugee)); see also 8 U.S.C. § 1158(b)(1)(A) (asylum can be granted to a refugee); 8 C.F.R. § 1208.13(b) (elements for establishing asylum). Persecution is defined as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Camara v. Att'y Gen., 580 F.3d 196, 202 (3d Cir. 2009) (citation omitted). "[P]ersecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Id. (citation omitted). An asylum applicant who has demonstrated past persecution or a well-founded fear of future persecution is nevertheless ineligible for asylum if the Government establishes by a preponderance of the evidence that the applicant could avoid persecution by relocating to another part of his or her home country. 8 C.F.R. § 1208.13(b)(2)(ii); Sesay, 787 F.3d at

---

When the BIA issues its own opinion on the merits, we review the BIA's decision, not that of the IJ. Mahn v. Att'y Gen., 767 F.3d 170, 173 (3d Cir. 2014) (citation omitted). However, where, as here, the BIA expressly adopts portions of the IJ opinion, we review both the IJ and BIA decision. Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). We "accept factual findings if supported by substantial evidence," Sesay v. Att'y Gen., 787 F.3d 215, 220 (3d Cir. 2015) (citation omitted), and "[w]e review the BIA's legal determinations de novo, ordinarily subject to the principles of deference set forth in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-45 (1984)," id.

219. "The BIA's conclusions regarding evidence of past persecution and the well-founded fear of [future] persecution are findings of fact, and we therefore review these conclusions under the deferential substantial evidence standard," Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006), meaning we must "uphold the agency's determination unless the evidence would compel any reasonable fact finder to reach a contrary result," Sesay, 787 F.3d at 220 (citation omitted).

1

To establish past persecution, the applicant must show "(1) an incident, or incidents, that rise to the level of persecution; (2) that is 'on account of' one of the statutorily protected grounds; and (3) is committed by the government or forces the government is either 'unable or unwilling' to control." Camara, 580 F.3d at 202. (citation omitted).

There is substantial evidence to support the BIA's conclusion that C.A.H. did not suffer past persecution. C.A.H. testified that she was "hit[]" and "pulled . . . by the hair." A.R. 227. While this was undoubtedly frightening, the record does not reveal that this single encounter resulted in any injuries to her. "While this Court has not yet drawn a precise line concerning where a simple beating ends and persecution begins, our cases suggest that isolated incidents that do not result in serious injury do not rise to the level of persecution." Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005).[4]

---

[4] C.A.H. contends that she was also subject to persecution "in the form of extortion by the Barredoras." Pet'rs' Br. 17. However, unless the extortionist behavior is motivated by a statutorily protected-ground for asylum, extortion is not sufficient to establish the level of persecution necessary to establish eligibility for asylum. The record

C.A.H. argues that this single incident, viewed in the context of the murders of her nephews and brother and the beating of her daughter, rises to the level of persecution. The BIA did not ignore this context. Rather, the BIA correctly found that C.A.H. had "not pointed to any evidence that the deaths of her nephews and brother were intended as harm towards her[.]" A.R. 4 n.2. In fact, C.A.H. admitted that they were murdered not because of any reason pertaining to her, but "because they were not obedient to those taking over the area," A.R. 217, and "to send a message to everyone else in the town not to hesitate in cooperating with the demands of these people," A.R. 226. This admission undermines C.A.H.'s reliance on these murders to establish that she suffered persecution. Thus, the BIA correctly concluded that C.A.H. had not established that she was persecuted.

Even if C.A.H. had established persecution, she has not demonstrated that such persecution was "on account of" a statutorily protected ground, such as "membership in a particular social group, or political opinion." Sesay, 787 F.3d at 218-19 (citations and internal quotation marks omitted). To meet this nexus requirement, C.A.H. bears the burden of proving that "one central reason" for the persecution was a protected

_____

reveals three instances of extortionate behavior, but none were tied to a statutorily protected-ground for asylum. C.A.H. admits that the first instance of extortion, a demand for money when her nephew was kidnapped, was "simply a kidnapping for money," A.R. 225, and that his murder was "to send a message" to the community about the implications of not cooperating with the Barredoras' demands. A.R. 226. C.A.H. received a similar demand for money in exchange for her brother's life and an anonymous phone call threatening her if she did not pay the Barredoras tax, but there is no evidence to suggest that these extortionate acts were based on a statutorily protected ground.

7

characteristic. 8 U.S.C. § 1158(b)(1)(B)(i). The BIA correctly concluded that any harm C.A.H. faced is not on account of a protected ground, but was a result of "generalized violence in her country being perpetrated by criminal outlaws," A.R. 78; see also A.R. 5. The Barredoras impose "taxes" and punish those who do not pay, A.R. 224, and C.A.H. points to nothing in the record that undermines the substantial evidence supporting the BIA's "finding that the [Barredoras] . . . [were] motivated by a bare desire for money, not by political opinion or by hostility to [her]," Shehu v. Att'y Gen., 482 F.3d 652, 657 (3d Cir. 2007). While C.A.H. frames her failure to pay tax as an act of political resistance that "manifest[ed] . . . [her] political opinion," Pet'rs' Br. 24, nothing in the record demonstrates that the Barredoras interpreted her refusal as a political statement. As such, even if C.A.H. were persecuted, she cannot establish that it was on account of a statutorily protected ground.

Furthermore, C.A.H. is not eligible for asylum because she cannot "show that the threat of persecution exists for [her] country-wide." In re C-A-L-, 21 I. & N. Dec. 754, 757 (BIA 1997). An asylum applicant's demonstration of past persecution can be rebutted by a showing of reasonable relocation.[5] See Sesay, 787 F.3d at 219. Relocation is possible where it would be both successful (meaning persecution would be avoided)

------

[5] For the purposes of establishing the reasonableness of internal relocation, in cases where the applicant has not established past persecution, the applicant bears the burden, whereas in cases where the applicant has established past persecution, the Government bears the burden of establishing relocation is not reasonable. 8 C.F.R. § 208.16(b)(3).

and reasonable (meaning relocation would not be an undue hardship). 8 C.F.R. § 1208.13(b)(1)(i)(B); Gambashidze v. Ashcroft, 381 F.3d 187, 192-93 (3d Cir. 2004).

There is substantial evidence to support the BIA's conclusion that, even if C.A.H. suffered past persecution, relocation is reasonable. Specifically, the evidence shows C.A.H. fears the Barredoras in the state of Guerrero and the articles she submitted describe violence there, but the U.S. State Department's Mexico Travel Warnings do not demonstrate that violence is so pervasive that there are no regions in Mexico where she could relocate. While internal relocation in Mexico may pose challenges for C.A.H., that does not undermine the BIA's conclusion that internal relocation is reasonable.[6] As such, C.A.H.'s application for asylum on the basis of past persecution was properly denied.

2

There is also substantial evidence to support the BIA's conclusion that C.A.H. did not show a well-founded fear of future persecution. Camara, 580 F.3d at 202. "To establish a well-founded fear of [future] persecution, an alien must show that his fear is 'subjectively genuine and objectively reasonable," meaning the alien "has a subjective fear of persecution that is supported by objective evidence that persecution is a reasonable possibility." Chavarria, 446 F.3d at 520. However, a well-founded fear of future persecution is not established where the asylum applicant could feasibly relocate to

---

[6] C.A.H. also argues that internal relocation is not a possibility because violence against women is a nationwide problem. Pet'rs' Br. 25. C.A.H. did not raise this claim before the BIA, and thus she has failed to exhaust it, and we therefore lack jurisdiction to review it. See 8 U.S.C. § 1252(d)(1); Lin v. Att'y Gen., 543 F.3d 114, 120-21 (3d Cir. 2008).

another part of his or her country.  8 C.F.R. § 1208.13(b)(2)(ii).  Even if C.A.H. adduced

evidence of a well-founded fear of future persecution, there is substantial evidence

supporting the BIA's conclusion that C.A.H. can reasonably relocate to another part of

Mexico, so she is precluded from obtaining asylum relief based on a fear of future

persecution as well.[7]

C

To obtain CAT relief, an applicant must show "that it is more likely than not that

he or she would be tortured if removed to the proposed country of removal."  Kibinda v.

Att'y Gen., 477 F.3d 113, 123 (3d Cir. 2007) (citation and internal quotation marks

omitted); see 8 C.F.R. § 208.16(c)(2).  "Torture" under CAT "is an extreme form of cruel

and inhuman treatment" that is inflicted by or with the acquiescence of a public official

and "specifically intended to inflict severe physical or mental pain or suffering."  8

C.F.R. § 208.18(a)(1), (2), (5); see also Auguste v. Ridge, 395 F.3d 123, 143-44, 149 (3d

Cir. 2005) (applying the "specific intent" and "more likely than not" standards).  In

assessing whether it is more likely than not that an applicant would be tortured in the

proposed country of removal, relevant factors include "[e]vidence of past torture inflicted

upon the applicant" and "[e]vidence that the applicant could relocate to a part of the

---

[7] C.A.H. also seeks withholding of removal, which requires her to demonstrate a "clear probability" that, upon removal to Mexico, her "life or freedom would be threatened on account of one of the statutorily enumerated factors."  Senathirajah v. INS, 157 F.3d 210, 215 (3d Cir. 1998).  Because withholding of removal has a higher standard to satisfy than asylum, "[a]n applicant who does not qualify for asylum necessarily does not qualify for withholding of removal."  Obale v. Att'y Gen., 453 F.3d 151, 161 (3d Cir. 2006) (citing Guo v. Ashcroft, 386 F.3d 556, 561 n.4 (3d Cir. 2004)).  Because C.A.H. does not qualify for asylum relief, she does not qualify for withholding of removal.

country of removal where he or she is not likely to be tortured[.]"  8 C.F.R § 1208.16(c)(3)(i-ii).

The two reasons the BIA gave for denying CAT relief are supported by substantial evidence.  First, there is nothing in the record to show C.A.H. had been tortured.  The single incident in which C.A.H. was "hit[]" and "pulled . . . by the hair," A.R. 227, does not amount to an "extreme form of cruel and inhuman treatment" that is "specifically intended to inflict severe physical or mental pain or suffering," 8 C.F.R. § 208.18(a)(1), (2), (5).  C.A.H.'s assertion that the attack on her and the murder of her family members was "part of a continuing scheme of intimidation by the Barredoras designed to engender fear and compliance," Pet'rs' Br. 28, does not undermine the BIA's ruling.  Second, the record shows that C.A.H. can reasonably relocate to another part of Mexico.  Accordingly, the BIA correctly dismissed C.A.H.'s CAT claim.

## III

For the foregoing reasons, we will deny the petition.